FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2017 JAN 19 P 1: 05

CLERK _JBurton_
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

UNITED STATES OF AMERICA,  *
                            *
        v.                  *          CR 116-079
                            *
MIKE ARTHUR LAMBERT,        *
                            *
        Defendant.          *

## O R D E R

Presently before the Court is Defendant Mike Arthur
Lambert's Amended Motion to Suppress. (Doc. No. 18.) A
hearing was held on Defendant's motion on January 17, 2017.
For the reasons set forth herein, Defendant's motion is
**DENIED**.

## I. BACKGROUND

At 3:50 p.m. on July 20, 2016, Judge J. Wade Padgett,
Superior Court Judge for the Augusta Judicial Circuit, signed
a search warrant (the "Warrant") for Defendant Lambert and the
premises of 2504 Shannon Court, Hephzibah, Georgia 30815 (the
"Premises") for "[i]llegal firearms, [c]ocaine, [m]arijuana,
MDMA, and any other controlled substance, [c]urrency,
documents relating to the sale or purchase of illegal
narcotics or any packing used to facilitate [violation of
O.C.G.A. § 16-13-30 (*i.e.*, Georgia's Controlled Substances

statute)]." (Doc. No. 20-1, at 1.) The Warrant was issued based upon an Affidavit for Search Warrant (the "Affidavit") attested to and submitted by Investigator Bradley Capitosti of the Richmond County Sheriff's Office. (Doc. No. 20-1, at 2-5.) In addition to a description of the Defendant, the Premises, and the property to be seized, the Affidavit set forth the following facts:

> Within the past forty-eight (48) hours, this Affiant has been in contact with a confidential and reliable source (*hereafter referred to as C/S.* [sic]) in reference to the drug activities involving Mike Arthur LAMBERT. The C/S has been known to this Affiant for approximately sixteen (16) months and has since assisted this Investigator and others in several related narcotics and illegal firearms arrest. The C/S has stated to this Affiant that he/she has seen Mike LAMBERT in possession of firearms, amounts of cocaine, marijuana and MDMA, which is being sold from the target residence of 2504 Shannon Court. The C/S stated that he/she has been familiar with the illegal activities involving Mike LAMBERT since the beginning of May 2016 and has since witnessed Mike LAMBERT selling the illegal aforementioned narcotics to individuals unknown on several occasions. Within the past 72 hours, Inv. Capitosti and Inv. Julio Concepcion conducted physical surveillance at the residence of 2504 Shannon Court. Investigators observed vehicles arriving and parking on the roadway in front of the target residence and going inside the front door of the target residence. Investigators observed subjects coming out a short time later and driving away from the target residence. Investigators through training and experience know this type of activity to be consistent with the sale of illegal narcotics. During a records check, Inv. Capitosti discovered that Mike LAMBERT was charged with the offense of Possession of Cocaine and served three (3) years in confinement. Due to the recent information received by the C/S along with the

> activity observed by law enforcement officer, this
> Affiant believes that firearms, cocaine, marijuana,
> and MDMA is being kept and stored at the residence
> of 2504 Shannon Court and request a warrant be
> issued for the residence.

(Doc. No. 20-1, at 3-4.)

At approximately 10:15 p.m. that same day, officers with

the Richmond County Sheriff's Office executed the Warrant at

the Premises. (See Doc. No. 20-1, at 6; see also Lambert's

Aff., Doc. No. 18, Ex. 1, ¶ 1.) Defendant alleges that no

warning or alert was given upon the execution of the Warrant

at the Premises and that the officers "forcibly entered" the

premises. (See Lambert's Affidavit, Doc. No. 18, Ex. 1, ¶ 1.)

Defendant, allegedly believing that he was "a victim of a home

invasion by individuals with hostile intent," fled from the

Premises. (Id.) Defendant, however, was apprehended by

officers with the Richmond County Sheriff's Office on the

scene before he scale the Premise's back fence. Upon a search

of the Premises, the officers found and seized, inter alia,

firearms,[1] ammunition,[2] and drug contraband consistent with its

---

[1] Officers found and seized: (a) one Bushmaster .223
caliber rifle, Serial No. BK3D15488 (with an extended 100-
round magazine loaded therein, as well as an additional 10-
round magazine); (b) one Stevens Model 320 12 gauge shotgun,
Serial No. 150155D; (c) one Glock Model 22 .40 caliber
handgun, Serial No. APG053US (with an extended 30-round
magazine loaded therein, as well as an additional magazine of
unidentified size loaded with an unidentified number of rounds
therein); (d) one Walther PK380 .380 caliber handgun, Serial
No. WB019418 (with magazine); and (e) one Lorcin Model L25 .25
caliber handgun (with magazine). (See Doc. No. 20-1, at 6.)

3

distribution.[3] The Government avers Defendant admitted that the drug contraband and several of the firearms were his property. (See Doc. No. 20, at 2.) Moreover, while Investigator Capitosti testified that he presented a copy of the Warrant to Defendant upon his detainment and left a copy of the Warrant at the Premises, Defendant attests that it is his understanding that no copy of the Warrant was left at the Premises. (Compare Doc. No. 20-1, at 6 ("On the 20th day of June, 2016, at 10:15 p.m., I searched the (person) and (premises) and (conveyance) described in the warrant and I left a copy of the warrant (with) (at) LAMBERT, Mike Arthur@ 2504 Shannon Court, Hephzibah, Georgia 30815-, together with a written receipt for the items seized."); with Lambert's Aff., Doc. No. 18, Ex. 1, ¶ 2 ("It is my understanding that

---

Officers also found and seized a kevlar ballistic vest. (Id.)

[2] Officers found and seized: (a) one box of Winchester 12 gauge shotgun shells (as well as five loose shotgun slugs that were with the Stevens Model 320); (b) one box of Winchester .40 caliber ammunition, five boxes of Tulammo .40 caliber ammunition, and 38 loose .40 caliber bullets (as well as a .40 caliber magazine with an unidentified number of bullets loaded therein); (c) two boxes of Tulammo .380 caliber ammunition; (d) three loose .25 caliber bullets; and (e) ten loose 7.62 caliber bullets. (See Doc. No. 20-1, at 6.)

[3] Officers found and seized: (a) approximately 171.7 grams (6 ounces) of marijuana; (b) approximately 45.6 grams of cocaine; (c) 68 Oxycodone (15mg) tablets; (d) 96 Oxycodone (30mg) tablets; (e) five marijuana plants; (f) a black press with cocaine residue; (g) digital scales; and (h) and other drug paraphernalia (with no further description of the paraphernalia given). (See Doc. No. 20-1, at 6-7.)

4

the search warrant - or a copy of the warrant - was not left in my home at the time the police entered and searched."); <u>but see</u> Doc. No. 18, at 6 (only arguing that the Warrant is invalid because a copy of the Affidavit - as opposed to the Warrant itself - was not left at the Premises).

## II. STANDARD OF REVIEW

The Fourth Amendment provides in relevant part that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. Amend. IV. "Violations of the Fourth Amendment authorize courts to order the suppression of evidence." <u>United States v. Gilbert</u>, 942 F.2d 1537, 1541 (11th Cir. 1991). This "rule is calculated to prevent, not to repair. Its purpose is to deter — to compel respect for the constitutional guaranty in the only effectively available way — by removing the incentive to disregard it." <u>Elkins v. United States</u>, 364 U.S. 206, 217 (1960) (citing <u>Eleuteri v. Richman</u>, 141 A.2d 46, 50 (N.J. 1958)). Indeed, if "it is understood that the fruit of an unlawful search by state agents will be inadmissible in a federal trial, there can be no inducement to subterfuge and evasion with respect to federal-state cooperation in criminal investigation" and "forthright cooperation under constitutional standards will be promoted and fostered." <u>Id.</u> at 222. Accordingly, "evidence

5

obtained by state officers during a search which, if conducted by federal officers, would have violated the defendant's immunity from unreasonable searches and seizures under the Fourth Amendment is inadmissible over the defendant's timely objection in a federal criminal trial." Id. at 223.

In determining whether a search and/or seizure by state officers is so unreasonable as to require the suppression of any evidence obtained therefrom, the Court looks solely to federal law. Id. at 223-24 ("In determining whether there has been an unreasonable search and seizure by state officers, a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out. The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed."). That is, if the seizure is not one which would be condemned by federal law, the items seized should not be suppressed even though the seizure might violate the forum-state's law. See Gilbert, 942 F.2d at 1542 ("Since the search at issue here violated only the statutory provisions of the state, we hold that the district court correctly admitted the evidence of contraband that this search engendered.").

### III. DISCUSSION

Defendant challenges the validity of the Warrant, contending that it was fatally defective for the following reasons: (a) "the [Affidavit] contained insufficient information to allow a finding of probable cause to search the Premises" because "the [Affidavit] did not set forth sufficient facts from which the issuing judge could have determined that the informant was trustworthy" and/or "there was no showing of any corroboration of the information provided, particularly with respect to the allegations of criminal conduct;" (b) "the [Warrant] did not include a 'no knock' provision;" and (c) "the [Warrant] failed to particularly describe the place or places to be searched and the persons or things to be seized."

### A. Probable Cause

In his motion, Defendant avers that the Warrant was invalid for lack of probable cause because the Affidavit upon which it was issued "did not set forth sufficient facts from which the issuing judge could have determined that the informant was trustworthy." (Doc. No. 18, at 3.) In support, Defendant alleges that the Affidavit "began with an assertion that the informant was reliable, but that conclusory statement [does] not establish reliability." (Id.) Defendant also avers that probable cause was lacking because "there was no

meaningful corroboration through information that would have demonstrated that the informant was in possession of inside information not available to the general public," because "[a]n unvarnished statement that the informant has seen drugs in someone's house cannot establish probable cause to search." (Id.)

"[P]robable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983). Accordingly, "[p]robable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999) (citing United States v. Gonzalez, 940 F.2d 1413, 1419 (11th Cir. 1991)); see also United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002) ("[T]he affidavit must contain sufficient information to conclude that a fair probability existed that seizable evidence would be found in the place sought to be searched." (citing United States v. Pigrum, 922 F.2d 249, 253 (5th Cir. 1991)). Under this "totality of the circumstances" analysis, an affidavit in support of a search warrant "should establish a connection between the defendant

and the [area] to be searched and a link between the [area to be searched] and any criminal activity" and must be based on "fresh" information. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002) (citing United States v. Marion, 238 F.3d 965, 969 (8th Cir. 2001); United States v. Zimmerman, 277 F.3d 426, 437 (3d Cir. 2002)). An informant's veracity and basis of knowledge are also relevant considerations – as opposed to independent essential elements – in assessing whether probable cause existed so as to support a search warrant. Gates, 462 U.S. at 233 ("[T]hey are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability."). Similarly, independent police corroboration of an informant's tip is a relevant consideration – as opposed to an essential requirement – in the Court's analysis. Brundidge, 170 F.3d at 1353 ("[I]ndependent police corroboration has never been treated as a requirement in each and every case."); see also Martin, 297 F.3d at 1314 ("[W]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant." (citing United States v. Danhauer, 229 F.3d 1002, 1006 (10th

9

Cir. 2000)).

In this case, the Court finds that the Affidavit contains sufficient indicia of probable cause upon which to issue the Warrant. The Affidavit sufficiently explains the criminal activity - Defendant's possession and/or sale of illegal narcotics and firearms. The Affidavit also sufficiently links the criminal activity and Defendant to the Premises because it alleges that Defendant possessed and/or sold the illegal narcotics and firearms while inside the Premises. Further, the information contained in the Affidavit was "fresh" given that it was based on an informant's tip that was less than two days old and independent police investigation that was less than three days old.

Additionally, the informant's basis of knowledge was sufficient. Investigator Capitosti attested in the Affidavit that the informant gave a detailed description of Defendant's illegal activities, including his possession of firearms, cocaine, marijuana, and MDMA, and asserted that he/she had witnessed firsthand Defendant's possession of the illegal firearms as well as his illegal sale of the aforementioned narcotics from the Premises on several occasions since May 2016. (Doc. No. 20-1, at 4.) "An explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles the [confidential

informant's] tip to greater weight than might otherwise be the case." Brundidge, 170 F.3d at 1353 (confidential informant's "basis of knowledge was good" where the informant gave officers "a detailed description of the drugs in the room and the sale of some of those drugs in his presence") (citing Gates, 462 U.S. at 234).

The informant's veracity was also minimally sufficient in light of the circumstances. Investigator Capitosti certified that the informant had been known to him for approximately sixteen months and had since assisted him (and others) "in several related narcotics and illegal firearms arrest[s].") (Doc. No. 20-1, at 4.) Although some relevant information is not included – such as the exact number of times the informant had previously provided information to law enforcement, the veracity of each such tip, the number of arrests made from such tips, whether the informant's tips were essential to those past arrests, and whether the tips were the result of the informant's own illegal activity – it is evident that the informant "had provided useful enough information" to lead to past narcotics and illegal firearms arrests. See Brundidge, 170 F.3d at 1353.

Further, the information provided by the informant against Defendant in the instant case was corroborated by independent police investigation. Investigator Capitosti

11

attested that he and Investigator Julio Concepcion had conducted physical surveillance of the Premises less than three days prior to seeking the Warrant. (Doc. No. 20-1, at 4.) During their surveillance, the investigators observed subjects entering and exiting the Premises in a fashion "consistent with the sale of illegal narcotics" based upon their training and experience. (Id.) As well, Investigator Capitosti performed a records check and discovered that Defendant had been "charged with the offense of Possession of Cocaine and served three (3) years in confinement." (Id.) See United States v. Farese, 612 F.2d 1376, 1379 n.5 (5th Cir. 1980) (holding that a law enforcement officer's knowledge of a suspect's criminal record may properly be considered when assessing probable cause (citing United States v. Harris, 403 U.S. 573, 583 (1971))).

In sum, taking into consideration the informant's basis of knowledge and veracity coupled with the corroborating independent investigation by Investigators Capitosti and Concepcion, the Court finds that the totality of the relevant circumstances would have allowed Judge Padgett to conclude that there was a fair probability of finding contraband or evidence at the Premises or on Defendant's person. Accordingly, the Court finds that the issuance of the Warrant was supported by probable cause and that there was no

violation of Defendant's rights under the Fourth Amendment.

Even assuming *arguendo* that probable cause was lacking, however, the Court finds that exclusion of the seized items would not be appropriate under the "good-faith" exception to the exclusion rule. The good-faith exception applies - and therefore evidence obtained in violation of the Fourth Amendment need not be suppressed - where a search warrant is invalid but was issued by a detached and neutral magistrate and the officers executing the warrant reasonably relied on the warrant. See <u>United States v. Whitehurst</u>, 614 F. App'x 411, 414 (11th Cir. 2015) (citing <u>United States v. Leon</u>, 468 U.S. 897, 913 (1984)). "The [good-faith] exception exists because 'the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion.'" <u>Id.</u> (quoting <u>Leon</u>, 468 U.S. at 922); <u>see also</u> <u>Martin</u>, 297 F.3d at 1313 ("The purpose of the exclusionary rule is to deter unlawful police misconduct; therefore, when officers engage in 'objectively reasonable law enforcement activity' and have acted in good faith when obtaining a search warrant from a judge or magistrate, the *Leon* good faith exception applies." (quoting <u>Leon</u>, 468 U.S. at 919-20)). There are four limited

scenarios where the good faith exception does not apply,[4] none

of which are applicable to the instant case. Accordingly, the

Court finds that, even if probable cause was lacking, the

Affidavit "contained sufficient indicia of probable cause to

enable a reasonable officer to execute the [Warrant] thinking

it was valid," and therefore exclusion of the items seized is

not warranted in the present case. See Martin, 297 F.3d at

1315-16 (citing United States v. Hodge, 246 F.3d 301, 309 (3d

Cir. 2001)).

## B. No-Knock

In his motion, Defendant asserts - and the Government

concedes - that the Warrant did not include a "no-knock"

provision. In an affidavit filed in support of his motion,

Defendant alleges that "[t]here was no warning or alert" prior

to officers "forcibly enter[ing] [the Premises] to execute

---

4 "The Leon good faith exception applies in all but four
limited sets of circumstances. The four sets of circumstances
are as follows: (1) where 'the magistrate or judge in issuing
a warrant was misled by information in an affidavit that the
affiant knew was false or would have known was false except
for his reckless disregard of the truth'; (2) 'where the
issuing magistrate wholly abandoned his [neutral and detached]
judicial role in the manner condemned in' Lo-Ji Sales, Inc. v.
New York, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979);
(3) where the affidavit supporting the warrant is 'so lacking
in indicia of probable cause as to render official belief in
its existence entirely unreasonable'; and (4) where, depending
upon the circumstances of the particular case, a warrant is
'so facially deficient—i.e., in failing to particularize the
place to be searched or the things to be seized—that the
executing officers cannot reasonably presume it to be valid.'"
Martin, 297 F.3d at 1313 (quoting Leon, 468 U.S. at 923).

[the Warrant]" and that he "did not know the identity of the people who broke through my front door nor was [he] aware of their purpose in doing so." (Lambert Aff., Doc. No. 18, Ex. 1, ¶ 1.) On this basis, Defendant argues that the seized property should be suppressed. In contrast, Investigator Capitosti testified that a visitor – with money in his hand – was knocking on the Premise's front door upon the officers' arrival, at which time the officers announced "Richmond County Sheriff's Office." (See also Doc. No. 20, at 6.) Investigator Capitosti further testified that, upon making this announcement and upon an individual inside the Premises spotting the officers outside the door, the officers could see and hear activity inside the Premises and saw Defendant running toward the back of the house. Accordingly, the officers forcibly entered the Premises and detained Defendant as he tried to flee over the fence in the back yard. (Id.) The Government argues that these circumstances, in addition to the presence of several other individuals inside the Premises, "led to [the officers'] immediate entry after announcing their presence to prevent the destruction of evidence and potential violence and because at this point knocking would likely be futile." (Id.)

18 U.S.C. § 3109 provides that an "officer may break open any outer or inner door or window of a house, or any part of

a house, or anything therein, to execute a search warrant, if, *after notice of his authority and purpose*, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant." Id. (emphasis added). "In order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." Richards v. Wisconsin, 520 U.S. 385, 394 (1997) ("This standard - as opposed to a probable-cause requirement - strikes the appropriate balance between the legitimate law enforcement concerns at issue in the execution of search warrants and the individual privacy interests affected by no-knock entries."). The bar for "[t]his showing is not high." Id. Indeed, the Eleventh Circuit has "repeatedly noted the dangerous, and often violent, combination of drugs and firearms," which "may give rise to reasonable suspicion of danger and justify a no-knock entry." Whittier v. Goldstein, 343 F. App'x 517, 521 (11th Cir. 2009) (citations omitted). Further, the Supreme Court has noted that a no-knock entry may be justified given "the easily disposable nature of the drugs" at issue. Richards, 520 U.S. at 395-96. Moreover, "a magistrate's decision not to

authorize a no-knock entry should not be interpreted to remove the officers' authority to exercise independent judgment concerning the wisdom of a no-knock entry at the time the warrant is being executed." Id. at 396 n.7.

Here, even assuming *arguendo* that the officers did not announce their authority or their purpose, a "no-knock" entry would have been justified because it would have been reasonable under the relevant circumstances to believe that announcing their presence would be dangerous, futile, or inhibit the effective investigation of Defendant's crimes. The officers at issue were serving a search warrant on the home of a suspected illegal narcotics dealer with a criminal history who was believed to have ready access to firearms located inside the Premises at the time the Warrant was served. These factors alone would have provided a "particularized and objective basis for a reasonable officer to suspect the situation had a potential for violence" justifying a no-knock entry. See Whittier, 343 F. App'x at 521-22 ("no-knock" entry justified where information available to officers serving warrant included that the defendant "(1) received and sold narcotics, including cocaine and marijuana, at his residence; (2) had a criminal history; (3) carried a concealed semi-automatic handgun on his person; and (4) possessed a shotgun that he kept in his bedroom"). Moreover,

there were other circumstances that, at least together with the aforementioned information, would have justified a no-knock entry, including: (a) the belief that there were illegal narcotics on the Premises or on Defendant's person which could be easily disposed of down a drain or toilet; (b) Defendant fleeing from the Premises; and/or (c) the presence of other individuals inside the Premises, where illegal drugs and firearms were believed to be located, while Defendant fled.[5]

Accordingly, suppression is not warranted based on the officers' alleged failure to announce their authority and purpose prior to entering the Premises.

## C. Particularity

Finally, Defendant argues baldly that the Warrant "does not satisfy the particularity requirement on its face." (Doc. No. 18, at 6.) Defendant argues that this defect, "coupled with the failure to leave a copy of the affidavit purporting

---

[5] Notably, Defendant attests that, because he "did not know the identity of the people who broke through [his] front door nor was [he] aware of their purpose in doing so," he "thought that [he] was the victim of a home invasion by individuals with hostile intent and so [he] ran from the house to escape what [he] believed to be a threatening situation." (Lambert's Aff., Doc. No. 18, Ex. 1, ¶ 1.) As testified to by Investigator Capitosti, however, the officers were wearing uniforms that clearly identified their employment by the Richmond County Sheriff's Office. Moreover, at the time he fled the Premises, Defendant left behind two adult males, two adult females (including his girlfriend), and three young children (at least one of which was Defendant's offspring) as well as the firearms discovered in the Premises.

to establish probable cause [*i.e.*, the Affidavit], rendered the [W]arrant invalid." (<u>Id.</u>) The Government argues that both assertions are without merit. The Court agrees.

As stated by the Supreme Court,

> [t]he Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one particularly describing the place to be searched and the persons or things to be seized. The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit. Thus, the scope of a lawful search is defined by the object of the search and the places in which there is probable cause to believe that it may be found. Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase.

<u>Maryland v. Garrison</u>, 480 U.S. 79, 84-85 (1987) (internal footnotes, quotations, and citations omitted). Accordingly, "[t]he Fourth Amendment requires only that the search warrant describe the premises in such a way that the searching officer may with reasonable effort ascertain and identify the place intended." <u>United States v. Graham</u>, 476 F. App'x 839, 841 (11th Cir. 2012) ("A warrant's description of the premises to be searched is not required to meet technical requirements or have the specificity sought by conveyancers. The warrant need

only describe the place to be searched with sufficient particularity to direct the searcher, to confine his examination to the place described, and to advise those being searched of his authority." (internal quotations and citations omitted)). Further, "a description of property [to be seized] will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit." United States v. Moody, 977 F.2d 1425, 1432 (11th Cir. 1992).

Here, the Warrant itself specifically identified both Defendant and the Premises to an exacting degree such that it cannot be argued in good faith that the particularity requirement is not met. Indeed, the Warrant described the person and place to be searched as:

> A Black Male identified as Mike Arthur LAMBERT, DOB: [##]/[##]/[####], SSN: [###]-[##]-[####], Approximately 6'00"-6'02" in height and 210-220 lbs in weight and any other person(s) believed to be involved in illegal activity.
>
> 2504 Shannon Court, Hephzibah, Georgia 30815_Known as: Traveling on the 2500 block of Shannon Court from its intersection with Stafford Drive, the residence will be fourth (4th) residence located on the right side of the roadway. The residence will be a single story dwelling constructed of brown brick and brown trim, with white and brown shutters. The residence will display a white front door with the numbers 2504 written on the top A-Frame above the front porch. According to Augusta GIS mapping the parcel number of 2504 Shannon Court will be 130-0-052-00-0.

(Doc. No. 20-1, at 1.) Further, the Warrant described the property to be seized as:

20

> [i]llegal Firearms, Cocaine, Marijuana, MDMA and
> any other controlled substance, Currency, documents
> relating to the sale or purchase of illegal
> narcotics or any packaging used to facilitate the
> below listed violation(s).
>
> This is in violation of law, to wit: Violation of
> the Georgia Controlled Substance Act: Possession of
> Cocaine, Marijuana, MDMA and any other controlled
> substance O.C.G.A., 16-13-30[.]

Id. Given the nature of the charges leveled against

Defendant, it is unclear how the Warrant could have more

thoroughly described the property to be seized. Accordingly,

the Warrant sufficiently described the person and property to

be searched and the property to be seized. Because the

Warrant was facially valid, it is immaterial whether a copy of

the Affidavit was left at the Premises.[6] Therefore, this

---

[6] While Defendant asserts in his motion that a copy of
the Affidavit was not left at the Premises, Defendant argued
at the hearing - and attests in his affidavit in support of
his motion - that a copy of the Warrant itself was not left at
the Premises. (Compare Doc. No. 18, at 6 ("The warrant in the
case at bar does not satisfies [sic] the particularity
requirement on its face. That defect coupled with *the failure
to leave a copy of the affidavit purporting to establish
probable cause,* rendered the warrant invalid." (emphasis
added)); with Lambert's Aff., Doc. No. 18, Ex. 1, ¶ 2 ("It is
my understanding that *the search warrant - or a copy of the
warrant - was not left in my home* at the time the police
entered and searched." (emphasis added)).) Federal Rule of
Criminal Procedure 41 requires, *inter alia,* that "[t]he
officer executing the warrant must give a copy of the warrant
and a receipt for the property taken to the person from whom,
or from whose premises, the property was taken or leave a copy
of the warrant and receipt at the place where the officer took
the property." FED. R. CRIM. P. 41(f)(1)(C). Here,
Investigator Capitosti testified that he both presented a copy
of the Warrant to Defendant upon his detainment and left a
copy of the Warrant at the Premises. (See also Doc. No. 20-1,

21

argument for suppression also fails.

---

at 6 (attesting in the Warrant's Return that he left a copy of the Warrant with "LAMBERT, Mike Arthur@ 2504 Shannon Court, Hephzibah, Georgia, 30815-, together with a written receipt for the items seized" (capitalization and punctuation original)).) Even ignoring that Plaintiff has not actually alleged that he did not personally receive a copy of the Warrant (as opposed to it being left in the Premises), this alleged failure would not require the suppression of any seized property without a showing of prejudice or deliberate violation, neither of which has been made by Defendant. See United States v. Gerber, 994 F.2d 1556, 1560 (11th Cir. 1993) ("Unless a clear constitutional violation occurs, noncompliance with Rule 41 requires suppression of evidence only where (1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule." (citing United States v. Loyd, 721 F.2d 331, 333 (11th Cir. 1983)); United States v. Marx, 635 F.2d 436, 441 (5th Cir. Jan. 27, 1981) ("Failure to deliver a copy of the search warrant to the party whose premises were searched until the day after the search does not invalidate a search in the absence of a showing of prejudice."); see also United States v. Simons, 206 F.3d 392, 403 (4th Cir. 2000) ("the failure of the team executing the warrant to leave either a copy of the warrant or a receipt for the items taken did not render the search unreasonable under the Fourth Amendment" absent a showing of prejudice or intentional disregard); United States v. Williamson, 439 F.3d 1125, 1132-34 (9th Cir. 2006) (failure to deliver a copy of the search warrant to the party whose premises were searched does not "rise[] to a "constitutional magnitude" and therefore "[t]he error, therefore, is a 'mere technical error,' and suppression is only appropriate if [the defendant] suffered prejudice or if the violation was deliberate.").

## IV. CONCLUSION

For the foregoing reasons, Defendant's Amended Motion to Suppress (doc. no. 18) is **DENIED**.

**ORDER ENTERED** at Augusta, Georgia, this _____ day of January, 2017.

UNITED STATES DISTRICT JUDGE